May it please the Court, Mark Sheridan from Patton Boggs on behalf of Lexington Insurance Company. Very well. If I may, Your Honor, I'd like to reserve three minutes for rebuttal. Okay. You will see what you have on the clock. Certainly. Your Honor, our arguments are in our brief, and we think that they state what is necessary to have the judgment of the District Court reversed. However, if I can, I'd like to focus the Court on two issues. The first being whether the allegations of Mattel's complaints satisfy the insuring agreement of the Lexington policy, and also the Cromit Forrester policy. And then second, whether the advertising exclusion that is contained only within the Lexington policy excludes coverage for this claim. The District Court found that the unspecified use of Mattel's marketing plans and advertising strategies satisfied the in-your-advertisement requirement of the Lexington policy. The policy requires that the insurer, in order for coverage to exist, must demonstrate that it used another's advertising idea in its advertisement or that it infringed another's copyright in its advertisement. There is no allegation anywhere in the underlying action that MGA used Mattel's advertising ideas or copyrights in its advertisements. That's the key to your case, is those three words, in your advertisement. Not in order to make up an advertising campaign or to compete against anybody, but has to show up in the advertisement. That's the substance of this claim, isn't it? That is the requirement, Your Honor. This policy language is different from that which came before it, which said you could use it in the course of advertising or in the course of creating an advertisement. This requires that it actually be used in the advertisement. And there's not a single allegation in the underlying action that MGA used any of Mattel's advertising ideas in its advertisements. They say over and over that MGA used the material. Can't you fairly infer that it was used in the advertising and wasn't it your burden to show that it wasn't? Your Honor, I don't believe that you can fairly infer it. The cases that talk about inferences talk about you can infer claims when there are facts alleged. If there are sufficient facts alleged, you can infer that a claim was made or could have been made. Nothing in those decisions allows you to infer facts. And that's what the district court did. It inferred the fact that it was used in an advertisement because it was used. There is no allegation to that effect. There is not a single fact supporting the allegation or the contention by the district court and MGA that it was used in an advertisement. And, in fact, Your Honor, if I may, the first offense, offense F, states that there is coverage if MGA were to use Mattel's advertising idea in its advertisement. If you infer that use in any circumstance when it involves an advertising idea occurs in an advertisement, the advertisement requirement is superfluous. It's surplusage. There's no need for it. And this court has long held that you're not to read words out of an insurance policy or out of a contract. You know, your time is short, and I'm just wondering why you're making this argument. This is the same argument that the other insurance are making, and if you win on this, I guess everybody wins. But you've got an argument that applies only to Lexington, which seems to me a much better place to allocate your time, because nobody else will argue that if you sit down and don't talk about it. Yes, Your Honor. In fact, I was hoping to get through that argument quickly to get to the advertising exclusion. It's going to be very difficult to get through that argument very quickly, the first one you picked, because that is a very big mountain to move. You have a much smaller moral hill with your other argument, which is that endorsements take precedence over the main policy. It's a pretty straightforward argument, and if you win on that, that's it. You don't need to win another one. That is correct, Your Honor. We simply followed. So you just sort of want to take on the difficult argument just to show off, right? Actually, no, Your Honor, I'm happy to move on to the advertising exclusion. Can I ask just a very sort of specific practical question first on that? So the endorsement that was in my excerpts, endorsement number 011, says that it was effective for the 2008 policy, and you didn't submit in the excerpts the other two policies. Did they also contain the endorsement? Yes, Your Honor, I believe we did. I think it appears first in the excerpt of record page 723, which I believe is the first. Is that what yours is at? That is the first policy period, and that is the first endorsement. It's endorsement number 08 in that policy, Your Honor. And so it's in all three policies? It's in all three policies, Your Honor. Okay. And when Lexington provided MGA with those policies that contained the endorsement, did MGA object to the inclusion of the endorsement? They did not, Your Honor. In fact, Your Honor, it's not been rebutted, but MGA went out and bought separate insurance coverage for advertising losses. It has a separate policy that it purchased. And you're saying from that we should infer that they understood that this exclusion controlled? Absolutely, Your Honor. I'm sorry. That is in the record. Your Honor, we asked the district court to supplement the record. He said it was unnecessary. We raised it. It's been raised in numerous briefs. MGA has not once rebutted the issue. So the policy is not in the record, but there have been statements and there's been no rebuttal from MGA that it purchased those policies for all three years, by the way. What was the nature of that coverage? Was it excess insurance or just a separate area of coverage? It's a separate area of coverage, Your Honor. Okay. I don't quite understand why you had to supplement the record. You forgot to put it in the first time? Well, the issue is certainly, Your Honor, it was an oversight that it wasn't included on our part. Okay. So then you try to supplement the record and the fact is it's not on the record and they haven't rebutted it. I understand. But you don't need that, right? You just look at the plain terms of the policy are clear. If the personal injury or advertising injury occurred in an advertisement or in advertising, it is excluded under the policy. It reminds me of a piece of legislation I had many years ago where if you crossed out all the no's and not's, it said nothing. So this basically is sort of one of those things where you take the main policy and the endorsement, it sort of wipes out the... But it doesn't, Your Honor. It leaves a lot of coverage for personal injury and advertising injury. What it leaves is all the offenses that do not require advertising to be satisfied. A perfect example is the oral or written publication of material that slanders or disparages an organization's goods, products, or services. That is not removed by this endorsement. It doesn't require an advertising. It doesn't require an advertisement. And, in fact, the best evidence that it was not removed is the fact that Lexington relied upon that provision, that enumerated offense, enumerated offense D of the personal injury and advertising injury coverage, to defend MGA. You're below two minutes. Your Honor, unless the Court has more questions, I'd like to reserve... Well, I have one other question. An exclusion and endorsement under California law seems to control so long as, and I'm quoting from Gaylord here, that it's conspicuous, plain, and clear. Do you think this endorsement with its exclusion is conspicuous, plain, and clear, and why? Absolutely, I think it's conspicuous, plain, and clear, Your Honor. It makes it very clear. First of all, it was attached to the policy. It's listed in the declarations. It's listed in the statement of forms. And by its terms, it clearly excludes personal and advertising injury that occurs in an advertisement. In this regard, it's no different than any other advertisement. It removes something from the coverage grant. No other advertisement? You mean no other endorsement? I'm sorry, Your Honor? I saw you say advertisement. It's no different from what? It's no different from any other exclusion, Your Honor. It removes from coverage something that the coverage grant says will be covered. It's an exclusion like any other, Your Honor. Is there anything in the main policy that says, quote, all terms and conditions of this policy apply unless modified by this endorsement? Your Honor, I will say that I'm not aware of that. But the endorsement itself, by its terms, supersedes the policy. That's correct, Your Honor. Okay, 30 seconds. That's all. Thank you. Okay. I believe we're next here from Susan Field. It's just from what my sheet tells me. You must be Susan Field, right? Susan Field, Your Honor. Thank you very much. Susan Field for Crum and Forster. And you are representing? Crum and Forster Insurance Company. Crum and Forster Insurance Company. Okay. This is a case about coverage, as you pointed out, for advertising injury. But the Mattel MGA case, as this Court is perhaps most aware, was not about advertising injury. As Your Honor indicated in the opening lines of the opinion in the first MGA Mattel case, the question there was, who owns Bratz? And that's what that case was about. It was about ownership rights. It was about unfair trade practices. It was about ownership infringement. That's what the case looked like on appeal after it had been winnowed down by discovery trial and so on. And oftentimes complaints strike that. Almost always complaints are much broader than the case as it winds up.  And we have to look at that point, not at the case as it winds up on appeal. I absolutely agree. But the allegations of the Fourth Amendment answer and counterclaim, and we should note, remember, that we're here to talk about the Fourth Amendment answer and counterclaim, which was in April of 2010, not the original complaint, because that has some other issues. But we are here to talk about whether, as of the deletion of the traits libel claim in April 2010, did these carriers have a duty to defend. So we are past that point at that point. And the question here is, what was the case about? What was alleged? The district court found there were allegations, as indicated, of somehow that there were allegations in MGA's advertisement. There is not one allegation in the Fourth Amendment answer and counterclaim about MGA's advertisement. Is there any authoritative case or otherwise that construes in your advertisement? There is. And what I was going to suggest is to go look at those cases. Because one of the things I want to point out first, counsel did indicate, is that this language is different from many of the policies that have been construed. A lot of those say the early policies, in fact, some of the early policies that were in this case, but aren't our policies, talk about in connection with advertising or in the course of advertising or in connection with or arising from. They don't deal – some of them deal with misappropriation of advertising ideas. Yes. Which deal with in your advertisement? The IDG case, the Tenth Circuit case, dealt directly with coverage that involved in your advertisement. And that court specifically held in finding there was no duty to defend, and it was a copyright infringement case, too, that the infringement alleged was arising out of the copying and sale of the product. It was something called supervision and not out of the promotional activity involved. But I think other cases support that. We are applying California law, right? Yes. And I think that California law would apply the same language. What I would note is that the Oglio case points out the difference between the advertising language there and language such as misappropriation of advertising ideas. In the footnote, it's footnote 7, I believe, the court notes that perhaps – Footnote 7 in Oglio. You're still in Oglio. In Oglio, right. The court notes that had the language there been the broader language of misappropriation of advertising, that perhaps the insured would have had a better argument. But they didn't have it there, and MGA didn't have it here. That form of coverage was in the 2000s and 2001 policy. They are not in this Kremit-Forster policy that didn't incept until 2003. What about the language in the complaint about having used sales, pricing, advertising, marketing, and other financial information to ensure that they could obtain every advantage over Mattel? There's no question that they're not. It does, in fact, use the word advertising, right? It does actually use the word about – and we can find it, I believe that's paragraph 53. It talks about gaining advantage in advertising. It doesn't make any allegation at all about in your advertisement. And at no time in this case, in no time in this complaint – No, it talks about advantage over Mattel. It doesn't talk about advantage in advertising. It says it used advertising and other financial information to ensure that they, MGA, could obtain every advantage over Mattel. That's correct. And that's your point. That's my point, Your Honor, that nothing here talks about using it in MGA's advertisement. If that in your – in your advertisement language was not in our policy, MGA would have a pretty decent argument. The requirement that it be in the advertisement is narrower. We have to consider the fact that the other language is broader, and this Court should interpret it. And so the problem I have with your argument is that we have to assume that MGA didn't advertise Bratz. I don't think so. I think we all know that they advertised Bratz. Of course they did. I'll get to that issue. That's the point. I mean, if you look at this complaint and you would reasonably assume that having stolen all these things, including Bratz, that it would have advertised. And it just seems to me that what Judge Carter found just makes eminent sense. Well, what Judge Carter found – and I can get to the issue I think Your Honor is raising – is actually Judge Carter found that the idea of advertising the dolls did not give rise to a duty to defend. Judge Carter directly found that allegations about the dolls and the advertising and the argument about advertising of the dolls, he rejected entirely. What Judge Carter found was that the trade secret information somehow could be construed as either being the use of another's advertising idea or copyright infringement in the advertisement. So let me turn to that because I think that's a critical mistake that the Court made. The fact is that what Judge Carter relied upon were all of Mattel's arguments about theft of trade secret. And what Judge Carter said was, well, perhaps they weren't trade secrets. But Mattel's allegation itself at paragraph 34 expressly calls them trade secrets and defines them as trade secrets. Excuse me, 134. 134 defines trade secret material which was alleged to be stolen and the language that Judge Carter relied upon shall mean – and it lists it – documents, materials, designs, names, and other information stolen and includes all of the confidential trade secret information. These policies have an absolute trade secret exclusion. But what Judge Carter said was, well, maybe that trade secret exclusion doesn't apply because maybe they weren't trade secrets. But that conflates and misunderstands the idea of coverage because the idea is that they were specifically alleged to be trade secrets. And if they weren't trade secrets, it doesn't make any sense. The other thing is, Judge Carter – I still understand that it was not precisely what they allege, but whether or not given what they allege, whether this is an area you could reasonably expect to have litigation. See, so, you know, they can allege something, they can call it a trade secret, and yet if from context it looks like litigation will lead into other things, then that's covered, right? You have to defend. You have a duty to defend. But Judge Carter's analysis was that the trade secret material might have satisfied the advertising material because perhaps it wasn't a trade secret. Now, Mattel alleged that it was. And if we're going to go with the allegations, we don't get to go behind them and say, well, maybe it wasn't. Can Mattel actually allege trade secret and other kinds of information? The complaint doesn't just allege theft of trade secret information. It does because paragraph 134 defines all of those materials as trade secrets. When they talk about it, they sometimes use the word other confidential information, but paragraph 134 specifically defines all of that information to be a trade secret. And then what Judge Carter did was say, well, maybe it's not a trade secret or maybe it's a slogan, a trade dress, or copyrighted, and it was used in the advertisement. There's no allegation of that. There's no allegation of anything that could be a slogan. And the idea that it could have been copyrighted is antithetical to the idea of a copyright if this stuff was trade secret. If we were to look at just one California case. I would like to reserve a few minutes because I know that they will address an issue that we have not yet been able to touch. You're down to 35 seconds, so it's going to be hard, but okay. If I were to just look at single California cases most helpful to you, since we are bound by California law, which case would you point me to? Well, I would point to Hyundai that is an example of a specific advertising idea that was used in an advertisement. I would look at Microtech, both of which are Ninth Circuit opinions, which discusses the fact that it requires allegations in the complaint. Applying California law. Applying California law, both of those. I would look at Bank of the West. I would look at Oleo that talks about the distinction between language such as the misappropriation of advertising ideas and other language. And I would go back to Bank of the West, because in this case there is no separate harm alleged from the advertisement, even if this Court were to find such an advertisement. In case that I don't get to it, I do want to point out that MGA is going to argue about advertisement of the dolls. Judge Wardlaw, that's an issue that you raised. And I think that if this Court were to consider that argument, then the facts of the allegation, the findings of this Court, that the dolls began in 2001, invoke the prior publication rule. And in connection with this very policy, courts have already found that the prior publication rules apply. Okay. Thank you. Thank you. Good afternoon. Jeffrey Ehrlich for Leopolis MGA and Isaac Larian. I'll just go first to the coverage side, whether the allegations fall within the scope of the policy's coverage. We gave MGA a whole pile of attorney's fees. What happens to those? I'm kind of curious. It seems to me like I'm not quite sure I understand what's going on. Well, I mean. I mean, don't those eventually go to the insurance companies, or am I missing something? That's a whole separate litigation, Your Honor, and there's litigation pending about that. It's pending? A recovery action's been filed? Yes. It's in front of Judge Carter. And what's the issue there? Why doesn't MGA owe that money to its insurers? I'm really, I don't represent any MGA in that action. I'm really only here to speak to the insurance issue. But isn't that kind of curious? I mean, MGA's gotten a whole bunch of attorney's fees, supposedly for the insurance companies, and here we're fighting about whether the insurance companies get the attorney's fees that we've approved for your client. That is true, but that's just a separate issue. Not to our minds, since we've heard all of this. Pardon? Not in our minds. Right. Should we wait until that's resolved? No, I think it would probably be very useful to resolve the coverage issues, to sort of sift things out and to see what rights the various parties have against each other. Sometimes the insurance companies have multiple arguments about whether they're entitled to subrogation, how much is entitled. There are a lot of factual issues that have to get sorted out. I don't know that, and it's all pending now in front of Judge Carter. I mean, the money hasn't even been distributed. It's just been sort of put in action. And he declined to wait. I see. Okay. Go ahead. Thank you. The coverage here we're dealing with is a defense F, the use of another's advertising ID in your advertisement, and a defense G, infringing on another's copyright in your advertisement. Now you don't have any hope of G at all. I mean, that's out of the picture altogether. I really don't agree with that. I think that G is a very strong position for NGA. Do you need G if you have F? I don't need G if I have F, but it makes my life easier. And so I'm going to argue that there is coverage under G, because you have, it makes for kind of a boring oral argument, but there are just certain allegations that the insurers keep ignoring, saying there's not in the complaint. And I would like to just point a few of the allegations in the complaint and why I think they satisfy these. So Paragraph 49, that's on, I'm just using Crum and Forster's excerpts, 352. Whose excerpts? Crum and Forster's. Okay. So starting on Volume 2 at page 352, Paragraph 49 says that these are all about NGA hiring Mattel employees that had confidential information. It says that these employees took every document a competitor would need to enter the Mexican market, to compete unlawfully, not just in Mexico, but also in the U.S. and elsewhere. And it says they took information that included marketing projections, advertising budgets, promotional expenses, media plans, marketing plans, and strategies, marketing strategies, similar materials. So it's advertising-related material. Paragraph 53 says that NGA used this material, the sales, pricing, advertising, marketing information, to obtain every advantage over Mattel, including advertising and advertising. So, I mean, that's an express allegation, that the material was taken, it dealt with advertising, it was used to gain an advantage over advertising, and that Mattel lost market share as a response and had to advertise further. In Paragraph 50, it says that that stolen information gave NGA an unfair advantage in the United States and around the world, and the stolen documents included information about advertising expenditures and marketing strategies for Barbie products. Then Paragraph 57 says that NGA took trade secrets, including Mattel's advertising strategy, not only for Canada, but for the U.S. and the rest of the world. Paragraphs 59 to 62 talk about this employee that NGA hired away who became Ms. Brisbois, who became the MGA VP of sales, who had access to all- I don't see how that addresses their argument that this is not in advertising. This is about advertising, this concerns advertising, but they have an argument that says it's not in advertising. So you're reading these things off, but you're not answering their argument. Well, okay. I don't see a single thing in there that said used in your advertisement. I think that- Where is there anything that says it was used in your advertisement? They don't have the preposition in, no. Yeah, and there's nothing even close to that, though. Well, I think there's a lot that's close to it. They say that you took advertising, you used in your advertising, you competed against us, you advertised, and you gained advantage over us in our advertising. The complaint is all about NGA's advertising of Brad's products. So I think that the inference here- I guess the difference is it's an inference. You don't actually use the words. I mean, a complaint doesn't actually say the magic words that the insurance lawyers want it to have said. No. The word in is not- So you'd be better off to concede that and go to the inference argument that Judge Carter obviously accepted. Well, I agree that that's the inference, that if you're going to do all these things and gain these advantages- So the legal question is, are those magic words required in order for coverage to exist here? I don't think under California's duty to defend rules, under Scottsdale, where it's the facts that are alleged and the facts that can be fairly inferred. And so one of the facts that can be inferred, you have these allegations of advertising, and then you also say that Mattel argues, we own Brad's. We own the copyrights. So now you've got allegations. This is why I'm going to offense G. We own Brad's. We own the copyrights. You advertised it. And you violated our copyrights. Now, it doesn't say that your advertising violated our copyrights. It just says, we own it. You advertised it. And that violated- And all of your use violated copyrights. They didn't carve anything out of their copyright claim. So I think the allegations do satisfy coverage, G. Mattel's claiming it owns everything about Brad's, and the complaint is replete with allegations about MGA advertising. I mean, for G to apply, you'd have to have something that is arguably an infringement of the copyright in the advertising itself. Yes. Okay, and I'm just having trouble seeing where that is even remotely alleged. In my understanding- You can advertise Brad's dolls, or you can advertise dolls, without infringing the copyright. You might infringe a trademark. You might infringe trade secrets, or all sorts of stuff. But just using the word Brad's, saying Brad's is not a copyright infringement. Your exhibits attach the complaint that have pictures of Brad's. I mean, so using photos of Brad's, which are copyrighted, would be a violation. But there's no allegation that that's what they did. But they attached it to their- The use of an advertising. You know, you can advertise the dolls without using the images. That is true, but- And it's not- Mattel's Fourth Amendment answer had exhibits attached to it, including Brad's advertising and images of Brad's. So the discussion that even Mattel's making shows as examples of some of the infringing materials as advertising that have photos that arguably, according to Mattel, would infringe their copyright. So any time MGA is advertising Brad's, if they have an image of Brad's, Mattel's position would be that's an infringement of copyright. So I think there's potential coverage there under the California standard, which is admittedly a broad standard. It's a very policyholder-friendly standard. But the allegations here that are being made are certainly broad enough without any particular stretching or twisting to cover, at least by inference, the fact that all of this advertising dealt with Brad's advertising and included copyrighted materials. So- What then about the claim that the endorsement with the exclusion in it trumps all of this? Well, it is clearly a rule of construction that endorsements generally will supersede-  That is a California rule. You know, I mean, I've read all these cases- And this endorsement, by its term, says it supersedes policy. Yes. It says that this is added to the policy. It actually, by its term, says that the rest of the policy, other than what it says, is unchanged. It doesn't target any particular- It doesn't say, referencing the coverage dealing with advertising injury, that's deleted and this is replaced. It doesn't do any of that. It just says, by the way, here's another provision. And then when you read it and you take a Venn diagram approach of what's covered and what's not, then you should figure out that everything in the advertising injury coverage that is woven into the policy and the definitions of what the offenses are, what the exceptions to the exclusion are, what the- Judge Carter seems just to have ignored California law on this point. Me? No, Judge Carter. I don't think so. Well, he just ignored Venoco and all these other things and said, well, it's an ambiguity. But that's not what California law seems to say. It says that an exclusion and an endorsement trumps the body of the policy as long as it's clear, plain, and conspicuous. Well, that's why I think Judge Carter found what he was. The way he did, he didn't ignore the law. He said that there can be circumstances, that the requirement for clarity, Judge Trott. Why isn't this clear? I've looked at it. Because one aspect of clarity is that it has to be clear from the terms of policy how one provision of the policy interacts with another provision of the policy. Well, it just seems the California rule says, hey, there's an exclusion in this endorsement. We don't really care what's in the policy. That rules. I cannot agree with that. I think that the rule that endorsements must be- that terms that take away coverage must be framed in a way that is conspicuous, plain, and clear applies to endorsements. The rule that endorsements trump policy language is a subsidiary rule. The primary rule is that however you take away policy coverage, you have to do it in a way that's plain, conspicuous, and clear. Plain how the endorsement itself is ambiguous. The way I read Judge Carter's opinion was that he said when you read the endorsement with the rest of the policy, it creates an ambiguity. Yes. But if you apply the rule that the endorsement trumps, let's just look at the endorsement and explain how that's not clear or conspicuous or plain. The point that we made to Judge Carter is that you don't, in evaluating the clarity aspect, just focus on one aspect of the policy. That's why we rely on the Minkler decision. But that wipes out the California rule. No, it supplements the California rule. You still have to be the cases that we rely on. Haynes is an endorsement case. And it's the one that says that endorsements that take away coverage have to be plain, conspicuous, and clear. That's an endorsement. That's the point. It doesn't say the endorsement as compared to something in the body. The endorsement. We cite a case called Oliver Machine Company in 187 Calat III at 1510 that had an endorsement. Which case is that again? It's called Oliver Machine Company versus U.S. Fidelity and Guarantee at 187 Calat III, 1510. 1510, got it. And the pages that we discussed were 1558. So in that case, there was an endorsement that took away coverage for any claim that involved a product that was rebranded. And there was an additional insured on the policy. And all that additional insured did was sell the policyholder products that were rebranded. And the court said because this endorsement basically just wipes out coverage, that it wasn't enforceable. It wasn't clear. And in Minkler, you had an exclusion, not an endorsement, but an exclusion in the policy that said that if there are any intentional acts committed by any policyholder, there's no coverage. And that was clear. The California Supreme Court didn't find that was ambiguous. But there's another provision of the policy that says essentially the severability clause that makes it seem as if every policyholder has their own policy. And the court said that collectively there's an ambiguity when it's not clear how two contradictory portions of the policy relate to each other. They were within the policy. They weren't part of the endorsement in that case. That is true. So that would make sense. But here it's an endorsement. It's not within the confines of the policy as itself. And that's what the great brief points out, that the Oliver Machine Company case didn't address a conflict between an endorsement and the body. It was the body against the body. No. I think that Oliver was an endorsement that wiped out. The exclusion was in the endorsement that wiped out the rebranding. We have a disagreement. What a shock. So anyway. In the case. Is there a specific coverage for advertising policy that MGA took out and isn't a part of this record? There is nothing in the record about other policies. And I don't know. I don't. Mr. Sheridan says MGA has never disputed it. We've never disputed it because that was never put in the record other than Mr. Sheridan saying it was there. I'm not going to. It just was never in the record about what policies were there. It wasn't part of the motion. It wasn't. When they made their summary judgment motion, that wasn't something that they put in there to explain. If we were to disagree with you with respect to this exclusion, what has to happen to all of this? If you disagree with me with respect to that exclusion, then Lexington has a very good day. And Crum and Forster has a less good day. And what do we do with the case? Remand the whole thing? Sort it out again? When in doubt, I think that's always what I think. Yes, let Judge Carter sort it out. If Lexington is out because you buy the endorsement, wipes out coverage, I don't know what more role that they would have,  Why couldn't we just say that they're out and recalculate ourselves? I can't think of other than the fact that there are intradictory disputes. The Lexington is out. I don't know why you couldn't do that other than the fact that there are ongoing disputes between the various carriers that allocate what they've already done. And it may be better to have them all before the court so that those can be adjusted internally. But that's not in this case. No. This is just a claim of your client against Lexington. Yes. If we say that part of the judgment is wrong, that part of the judgment is wrong. Yes. That's the end of it, right? Yes. Thank you. Okay. Thank you. Well, let's see. You want a minute? I don't know if we have any time left. Thirty seconds. Thirty seconds. We'll make an even minute. How's that? Thank you, Your Honor. Two quick points. Judge Wardlaw, page 723 of our record does have the endorsement number eight in the 06 policy, and it is effective 1-1-0-6. Second, if there is no coverage under G, then F, anything that the court finds covered under F, is excluded by the trade secret exclusion. And finally, if this court determines that the Lexington endorsement excludes this claim from coverage, what that simply means is that Lexington is out of the case, it's entitled to reimbursement of the defense fees it's paid, and MGA has additional claims against the other carriers with respect to its defense. That's the end of the discussion. What do you make of Oliver Machine Company? Your Honor, I don't believe that, A, that it involved an endorsement addressing an exclusion versus the body. I think it dealt with who was an insured under the policy, and it was directly contradictory, the exclusion to the premiums paid by the insured. So it was a factual issue, not a – it was not an issue about the debate between the two forms. It was there was a factual issue about what occurred in that case. I don't believe it's the same as this circumstance. Okay. Thank you. Thank you. Okay. I think you are out of time. We'll give you a minute as well. Thank you. I think I have four points. First, counsel described the various paragraphs in which there were references to the theft of advertising ideas, as he said. I'd like to note that each one of them falls under a title that says steals confidential trade secrets. It falls within the trade secret exclusion. Second of all, in response to the comment that perhaps it wasn't a trade secret, it was simply confidential, the trade secret exclusion is actually an intellectual property in trade secret exclusion, and it talks about trade secrets or other intellectual property rights. I think if this was information that was trade secreted or it was that kind of confidential information, it falls within that exclusion. Even if the misappropriated idea could have been covered under earlier language, the misappropriation of advertising ideas, it's not covered under this language. There is no allegation of an advertisement anywhere in here that could possibly apply. And last but not least, if the argument about the dolls was at all persuasive to Your Honor, I would go back to look not only at the fourth amended answer and counterclaim, but also this Court's opinion in the first opinion in which it is undisputed that the dolls began being manufactured and sold in 2001. All of the allegations then would fall in the same advertising. There's nothing different about anything else that would have happened. It would have all predated the Crumman-Foerster policy and the prior publication exclusion, which is exclusion C, which at least two courts have recognized in looking at this policy should apply. Kagan. You made all of that in your brief really clear. I think what I just would like to hear what Crumman-Foerster thinks happens if we accept, if we were to reverse Judge Carter on the endorsement in the Lexington policy. I assume that what would happen if Your Honor found there to be a duty under our policies, which I would hope you would not find, is that MGA would come back and ask us to pay some more money, or Lexington would ask us to pay some more money, or ask Evanston to pay some more money. And to answer your question about where's the money, the money is currently in a limbo because there is a dispute between the carriers and MGA over whether or not they get any of that money, and Judge Carter has it in front of him stayed and pending a request to either intervene or to interplead that money, and it's just going nowhere at the moment. But the carriers have filed or tried to file an action to seek reimbursement of that money. Judge Carter has not allowed it to go forward yet, and it's there. But, you know, I understand that some of these issues might be less relevant if we were able to get reimbursement of the money that we paid for the money that this Court ordered. That's the answer to that. It's in the record. I'm not stating anything outside. Your Honors can take a look at PESA. With that, you know, I think this is narrow coverage. I think this was a complicated underlying case, but this case was a fight between MGA and Mattel over who owned Bratz and all of the copyright infringement claims related to ownership, and all of the claims about advertising strategies and marketing didn't have anything to do with an allegation of in any advertising. There's no doubt it was used. It was used to compete, but this policy doesn't have unfair competition coverage, and this Court should not find that coverage by allowing this case to find a duty to defend. Thank you. Since MGA and Larian are before us, is there any reason we ought not to issue an order asking for its position after the attorney's fees were awarded? I wouldn't have any problem with that. I mean, as you might know, we attempted to intervene in the case before, Your Honors, we had timely intervention. I think it would be a great idea. Okay. Thank you. Thank you. Well, the case just argued was sentimented. We may have further questions later on. If so, we will issue an order.
judges: Kozinski, Trott, Wardlaw